

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2008

# USA v. Washington

Precedential or Non-Precedential: Precedential

Docket No. 07-1884

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Washington" (2008). *2008 Decisions.* Paper 14.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/14

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 07-1523, 07-1884 & 07-2541

———

UNITED STATES OF AMERICA,

v.

RAYMOND WASHINGTON,
a/k/a Talib Alim,

Raymond Washington,
Appellant

UNITED STATES OF AMERICA,

v.

RAYMOND EDWARD WASHINGTON,
a/k/a Talib Alim,
a/k/a Kennard Gregg,

Raymond Edward Washington,
Appellant

IN RE: RAYMOND EDWARD WASHINGTON.
a/k/a Talib Alim,
a/k/a Kennard Gregg,

Raymond Edward Washington,
Petitioner

———

On Appeal from the Order of the United States District Court
for the Eastern District of Pennsylvania
(No. 04-cr-00103)

District Judge:  Honorable John R. Padova

On Appeal from the Judgment of the United States District Court
for the Eastern District of Pennsylvania
(No. 06-cr-00460)
District Judge:  Honorable Stewart Dalzell

On Petition for Writ of Mandamus
(Related to E.D. Pa. No. 04-cr-00103)

Argued:  October 27, 2008

Before: SLOVITER, GREENBERG, *Circuit Judges*, and
IRENAS,[*] *Senior District Judge*.

(Filed: December 11, 2008)


David L. McColgin, Esq. (Argued)
Maureen Kearney Rowley, Esq.
Federal Community Defender Office for the Eastern District of
Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA 19106

Counsel for Appellant

Patrick L. Meehan, Esq.
Robert A. Zauzmer, Esq.
Stephen A. Miller, Esq. (Argued)
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

---

[*] Honorable Joseph E. Irenas, Senior United States District
Judge for the District of New Jersey, sitting by designation.

2

_____

OPINION

_____

**IRENAS**, Senior United States District Judge.

This case arises from two consolidated appeals and a Petition for Writ of Mandamus brought by Raymond E. Washington, a/k/a Talib Alim, a/k/a Kennard Gregg. Number 07-1884 is an appeal on Double Jeopardy grounds of the district court's (Padova, J.) order vacating Washington's sentence for dealing counterfeit currency and scheduling a date to resentence him. Number 07-2541 is a Petition for Writ of Mandamus and/or Prohibition to Bar Second Sentencing, seeking to prevent the district court (Padova, J.) from resentencing Washington. Finally, No. 07-1523 is an appeal from Washington's conviction and sentence before a second district court (Dalzell, J.), for making false statements in the course of the earlier counterfeit currency case before Judge Padova. For the reasons set forth below, we issue a writ of mandamus directing the district court (Padova, J.) to vacate his order of March 20, 2007, which vacated the original sentence in the counterfeiting case, and we reverse the district court's (Dalzell, J.) sentence for the false statements conviction and remand for resentencing. We dismiss Washington's Double Jeopardy appeal as moot.

## I.

### A.

In December 2003, the United States Secret Service learned that an individual known as "Kennard Gregg" was passing counterfeit currency at the Veterans Affairs Medical Center in Philadelphia. The person in question was in fact Appellant, Raymond E. Washington ("Washington"), who was using Kennard Gregg's Veterans Affairs card to receive methadone treatment from the VA Medical Center. On January

3

28, 2004, Washington was arrested for knowingly selling counterfeit federal reserve notes in violation of 18 U.S.C. § 473. At the time of his arrest, Washington identified himself to the United States Secret Service as "Kennard Gregg" and provided Kennard Gregg's date of birth and Social Security number. He signed a *Miranda* waiver, statement, and Waiver of Right to Speedy Trial using the name "Kennard Gregg," or initials "K.G." Washington also told Pretiral Services that he was "Kennard Gregg" following his arrest.[1]

On March 22, 2004, Washington, still using the name "Kennard Gregg," pled guilty to Information No. 04-103 charging him with violating 18 U.S.C. § 473. During the plea, Washington was sworn in under the name "Kennard Gregg," entered the actual plea in that name, and responded to that name or acknowledged to the court that he was "Kennard Gregg" no fewer than nine times.

On June 23, 2004, Judge Padova sentenced Washington (under the name "Kennard Gregg") to a term of imprisonment of six months, three years of supervised release, restitution of $350, and a special assessment of $200. During the sentencing hearing, Washington was again sworn in under the name "Kennard Gregg," and was warned that his answers "would be subject to the penalties of perjury, or of making a false statement, if [he did] not tell the truth." Judge Padova relied on the presentence investigation report prepared by United States Probation Office. Throughout the presentencing investigation, Washington provided a mix of his own biographical information and what he knew about the real Kennard Gregg. Based on the information obtained, "Gregg's" criminal history category was two and the total offense level was nine, yielding a Sentencing Guidelines range of six to twelve months. Had Washington's criminal history been properly calculated using his true record,

---

[1] While fingerprint cards generated by both the United States Secret Service and the United States Marshals Service were sent to the FBI, there is, as of yet, no explanation why Washington's true identity was not discovered at that time.

his criminal history category would have been four and his offense level nine, yielding a Guidelines range of twelve to eighteen months. Again, during the sentencing hearing Washington responded to the court under the name "Gregg" no fewer than five times.

Washington appealed his sentence, still using the name "Kennard Gregg," arguing that the restitution order violated the holding in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005). The appeal was initially argued on June 8, 2005, and then was consolidated with two other cases and reheard en banc on November 1, 2005. We ultimately rejected Washington's argument. *See United States v. Leahy*, 438 F.3d 328 (3d Cir. 2006) (en banc); *United States v. Gregg*, 169 Fed. App'x 109 (3d Cir. 2006). Washington then filed a petition for writ of certiorari with the United States Supreme Court which was denied. *Gregg v. United States*, 127 S.Ct. 660, 166 L.Ed. 2d 547 (2006). Washington used the name "Kennard Gregg" throughout all of these proceedings.

At the time of his arrest on the counterfeiting charge, Washington was the subject of a state parole warrant issued on July 18, 1995, after he had absconded while on parole from a New Jersey conviction. He had remained a fugitive until his federal arrest.

The United States Bureau of Prisons discovered Washington's true identity while he was serving his federal sentence. The State of New Jersey learned that Washington was in federal custody, and on July 26, 2004, issued a fugitive warrant. Upon completing his federal term of incarceration, he was released to New Jersey authorities on January 3, 2005, and remained in custody in New Jersey until his release on December 12, 2005.

Following his release from New Jersey custody, on January 11, 2006, Washington met with probation officer Tomas Adamczyk. It was at this point that Washington disclosed his true identity to Mr. Adamczyk in order to avoid spending 30

5

days in an in-patient mental health program.[2] Washington came clean to Mr. Adamczyk, explaining that Gregg was someone he knew and that he used Gregg's VA card and personal information (with Gregg's permission) to get free methadone treatment because Washington was not a veteran. Washington admitted using the false name to avoid the outstanding warrant stemming from the 1995 New Jersey parole violation. He further admitted that the biographical information he had provided before was a mix of what he knew about Gregg and his own. Finally, Washington admitted to knowing that the criminal history in the presentence report was Gregg's and not his.

On July 17, 2006, after learning this information, the government moved to vacate the original sentence and sought resentencing on the ground that the original sentence was based on false representations to the court. Washington argued that the district court lacked jurisdiction to alter the sentence and that a second sentencing would violate the Double Jeopardy Clause. The court found that it had the "inherent power to vacate judgments procured by fraud," and that Washington's double jeopardy rights would not be violated by resentencing. *United States v. Gregg*, No. 04-103, 2006 WL 2850564, at *3, *4 (E.D. Pa. Oct. 3, 2006). Therefore, the court ordered an evidentiary hearing to determine if Washington had actually perpetrated fraud on the court. *Id.* at *5. Following the evidentiary hearing, on March 20, 2007, the court concluded that Washington had perpetrated fraud on the court, vacated Washington's sentence, and scheduled a resentencing (which has been stayed pending this appeal). *United States v. Gregg*, No. 04-00103, slip op. at 1

---

[2] Mr. Adamczyk had been assigned to Washington's case because he specialized in probation cases with mental health concerns, and the real Kennard Gregg had a history of mental illness. Additionally, at the March 22, 2004 plea, Washington told the court that he was under the care of a psychiatrist and taking "Prozac, Treadon, Tresadine and Rosadern or something like that, for hearing and seeing things."

(E.D. Pa. Mar. 20, 2007).[3]

## B.

While proceedings were pending before Judge Padova, Washington was indicted on September 5, 2006, on three counts of making false statements in violation of 18 U.S.C. § 1001 by

> knowingly and willfully ma[king] materially false, fictitious, and fraudulent statements and representations in that defendant WASHINGTON represented that his name was "Kennard Gregg," the name of another individual known to defendant WASHINGTON, and provided a sworn statement [and signed documents] using the name "Kennard Gregg," when, as the defendant knew, his name was and is RAYMOND WASHINGTON.

This indictment covered the statements made to the United States Secret Service (Count I), the United States Pretrial Services Office for the Eastern District of Pennsylvania (Count II), and the United States Probation Office for the Eastern

---

[3] The district court's memorandum opinion stated:
We find that Defendant intentionally provided false information to the Court in connection with his sentencing. Defendant intentionally and continuously used the identity of Kennard Gregg following his arrest in order to avoid a warrant for his arrest on a New Jersey probation violation. Defendant intentionally provided false information regarding his personal and family history to the probation officer and to this Court during his guilty plea and sentencing hearings, information that we considered in connection with Defendant's sentencing. We conclude that Defendant's sentence was based on fraudulent information submitted by Defendant.
*United States v. Gregg*, No. 04-00103, slip op. at 5 (E.D. Pa. Mar. 20, 2007). The district court ordered the name in the caption of the case be amended to "Raymond Edward Washington, a/k/a Talib Alim, a/k/a Kennard Gregg." *Id.* at 1.

District of Pennsylvania (Count III). On November 16, 2006, Washington pled guilty to all three counts before Judge Dalzell.

The sentencing hearing took place on February 20, 2007. Without objection, the court adopted the presentence investigation report (PSR) as the findings of the court. The PSR found the total offense level to be four and the criminal history category to be five, with a resulting Guidelines range of four to ten months.

The court took judicial notice of all the instances in which Washington had used the name "Kennard Gregg," including a signed bond and affidavit before the magistrate judge, his guilty plea and sentencing before Judge Padova, the affidavit opposing the Motion to Vacate Sentence, and the Motion to Stay Pending Appeal. The court also recounted the number of federal judges to whom Washington lied, naming all the judges of this Court sitting en banc and the Supreme Court Justices who denied the writ of certiorari.[4] The court suggested, and later found, that each was an uncharged violation of 18 U.S.C. § 1001. The court stated that, "I'm hard put to think of what could be worse in this kind of violation of this particular statute." In noting the need for deterrence, the court stated:

> That's rather important here, isn't it; that people, I mean, if somebody could have the wholesale protracted deception of the entire, literally all four, if you want to consider magistrates judges, a level, all four levels of the federal judicial system, of lying on the most material of fact. If you got four months for that, that would be a joke, in view of that, wouldn't it? . . . It would have virtually no deterrent effect.

The court took a brief recess to print out the docket entries from the appeal in *United States v. Kennard Gregg*, as

_____

[4] At the time of the rehearing en banc, now Justice Alito was still a member of the Court of Appeals, and therefore did not participate in the consideration of the petition for writ of certiorari.

well as a Westlaw KeyCite showing the denial of the writ of certiorari. It concluded that Washington, through his deception, had benefitted "to the tune of criminal history two versus criminal history five, to say nothing of the open matter in New Jersey."[5] In addition to Washington's prior convictions, the court also took note of his seven probation and parole violations (with another violation pending) suggesting that Washington would not be amenable to supervision.

After hearing from defense counsel and Washington himself, the court considered the Guidelines and the other § 3553(a) factors in deciding on a sentence. It found that "it is undisputed that the advisory guidelines range is four to ten months." The court then reiterated all of the federal judges to whom Washington misrepresented his identity under oath.

> As violations of 18 U.S.C. 1001 go, as I said to the prosecutor, so I say now, as a finding, I cannot imagine a more serious violation of this statute, in that a total of 22 federal judges were actively misled into thinking this defendant was someone other than the person he was impersonating. And, therefore, 22 federal judges were actively misled.
> As the prosecutor rightly points out, this goes to the very heart of what the federal judiciary is all about, which is the quest for truth and to deal with reality and that most assuredly didn't happen here.
> So this was as serious as it conceivably could be in violating this statute.

The court also found that there were not any mitigating factors, and that there is a need to protect the public from further crimes of the defendant. The court concluded:

---

[5] Judge Dalzell was relying on the PSR from the case before him, and not the one from the case before Judge Padova, which correctly noted that Washington would have had a criminal history of four had the correct information been given.

So, I will, under all of these circumstances, I should also stress the need to deter others from such egregious, egregiously material misleading federal judges in their work, that a sentence with in the advisory guideline range would be counterproductive, and indeed would encourage the kind of conduct that is just so off the chart as we have seen here.

Judge Dalzell sentenced Washington to five years imprisonment (the statutory maximum), three years of supervised release, a fine of $250, and a special assessment of $300.

## II.

The district court's order vacating the sentence constitutes a final appealable decision for the purposes of considering questions of Double Jeopardy under the "collateral order doctrine" and thus we have jurisdiction pursuant to 28 U.S.C. § 1291. *See Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2042, 52 L.Ed. 2d 651 (1977). We have jurisdiction to issue a writ of mandamus pursuant to 18 U.S.C. § 1651. We exercise plenary review over questions of law. *United States v. Hull*, 456 F.3d 133, 137 (3d Cir. 2006). A writ of mandamus requires Appellant to show a clear error of law, that will cause irreparable injury, and that no other adequate means of relief exists. *United States v. Wexler*, 31 F.3d 117, 128 (3d Cir. 1994).

We have jurisdiction to review a sentence imposed on the defendant by the district court pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We review a district court's sentence under an abuse of discretion standard. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).

## III.

The district court (Padova, J.) concluded that it possessed the "inherent power" to vacate its own judgment when the judgment was procured by fraud on the court, and furthermore that such "inherent power" was not limited by 18 U.S.C. § 3582(c) or Federal Rule of Criminal Procedure 35. *Gregg*, 2006

WL 2850564, at *1-3.  However, no such "inherent power" exists, and to the extent that it might have at one point existed, such power has clearly been abrogated by both statute and rule.  Because the district court's reliance on such power was a clear error of law, a writ of mandamus will be issued.

## A.

The theory that a federal court has the inherent power to vacate its own judgments when they have been procured by fraud was recognized in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), and again in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed. 2d 27 (1991).  In *Chambers*, the Supreme Court held a federal court has the inherent power "to vacate its own judgment upon proof that a fraud has been perpetrated upon the court."  *Id.* at 44, 111 S.Ct. at 2132.  The Court explained:

> This "historic power of equity to set aside fraudulently begotten judgments" is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public."

*Id.* (quoting *Hazel-Atlas*, 322 U.S. at 245-46, 64 S.Ct. at 1001) (internal citation omitted).  The Court acknowledged that lower federal courts' inherent powers could be limited by statute and rule because those courts were created by an act of Congress.  *Id.* at 47, 111 S.Ct. at 2134.  "Nevertheless, 'we do not lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power."  *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed. 2d 91 (1982)).

However, both *Hazel-Atlas* and *Chambers* are civil

11

cases.[6]  In the criminal context, the Supreme Court has held that district courts lack "inherent supervisory power" to enter an untimely judgment of acquittal *sua sponte* when doing so is in clear contradiction of Federal Rule of Criminal Procedure 29(c). *Carlisle v. United States*, 517 U.S. 416, 425-28, 116 S.Ct. 1460, 1466-67, 134 L.Ed. 2d 613 (1996).  The Court explained, "[w]hatever the scope of this 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure."  *Id.* at 426, 116 S.Ct. at 1466.  The Court recognized its holding in *Chambers*, but distinguished it "not only because of the clarity of the text [of Rule 29(c)], but also because we are unaware of any 'long unquestioned' power of federal district courts to acquit for insufficient evidence *sua sponte*, after return of a guilty verdict." *Id.*  Likewise, this Court is unaware of "any 'long unquestioned' power of federal district courts" to vacate a judgment procured by fraud in the *criminal* context.  *Id.*

In vacating Washington's sentence, the district court relied extensively on the Seventh Circuit's holding in *United States v. Bishop*, 774 F.2d 771 (7th Cir. 1985), and our holding in *United States v. Kendis*, 883 F.2d 209 (3d Cir. 1989).  However, such reliance was misplaced.  In *Bishop*, the government moved to vacate an order which modified Bishop's federal sentence to run concurrently with his state sentence, after it discovered that the modification had been procured by the defendant's fraud.  *Bishop*, 774 F.2d at 772-73.  The district court held a hearing, found that Bishop had intentionally misled the court, vacated its earlier order reducing his sentence, and reimposed the original sentence of three years.  *Id.* at 773.  Bishop appealed, arguing both that the court was without jurisdiction because the modification was sought outside of the 120 day period then provided by Rule 35(b)[7] and that it violated

---

[6] While Federal Rule of Civil Procedure 60(b)(3) effectively codifies the rule of *Hazel-Atlas*, there is no corresponding Federal Rule of Criminal Procedure.

[7] *Bishop* was decided under the old Federal Rule of Criminal Procedure 35, and prior to 18 U.S.C. § 3582 coming into effect.  As

12

the Double Jeopardy Clause. *Id.*

The Seventh Circuit rejected Bishop's Rule 35(b) argument, concluding that the fact that *Hazel-Atlas* was a civil case "does not change the result." *Id.* at 774 n.5. "It is the power of the court to correct the judgment gained through fraud which is determinative and not the nature of the proceeding in which the fraud was committed." *Id.* But the court did not elaborate on its reasoning, and only cited *Trueblood Longknife v. United States*, 381 F.2d 17 (9th Cir. 1967), where the court had revoked probation as a result of discovering fraud.

Prior to the 1985 holding in *Bishop*, federal courts had been sentencing criminal defendants for nearly 200 years, and we can find no body of law recognizing a federal court's inherent power to vacate a sentence at some indeterminate time after the sentence is rendered on the basis of a fraud occurring at the time of sentencing.[8] We are unpersuaded that a case from another circuit, based on unsupported assertions of past

discussed below, Part III.B *infra*, the structure of Rule 35 has been fundamentally changed since *Bishop* was decided.

[8] One district court has also held that "[t]he authority of the Court to correct judgments obtained by fraud applies to criminal, as well as to civil cases, and is not limited by Rule 35(b) of the Federal Rules of Criminal Procedure." *United States v. Gray*, 708 F. Supp. 458, 460 (D. Mass. 1989). However, *Gray* only cites *Bishop*.

Recently, another district court asked the Eighth Circuit to remand a case so that it could vacate the sentence it imposed based on the defendant's misrepresentations and resentence the defendant during the pendency of his appeal, citing *Bishop* for the "inherent power to correct judgments obtained through . . . intentional misrepresentation." *United States v. Fincher*, No. 06-50064, 2007 WL 2177062, at *9-10 (W.D. Ark. Jul. 27, 2007). In denying that request, the Eighth Circuit questioned "whether the district court has jurisdiction to resentence a defendant in the absence of statutory authority to do so." *United States v. Fincher*, 538 F.3d 868, 878 (8th Cir. 2008).

13

precedent, should form the basis of such a fundamental expansion of judicial powers.[9]

The district court also relied on our decision in *United States v. Kendis*, where the defendant was facing five years in prison for bank fraud. 883 F.2d 209 (3d Cir. 1989). However, the trial judge sentenced him to six months in prison followed by five years probation. *Id.* at 210. Unknown to the court, Kendis continued to perpetrate other bank frauds after his plea, both before and after his sentencing, and Kendis was subsequently charged with five additional counts of bank fraud. *Id.* As a

---

[9] The government attempts to demonstrate the historical existence of such a power by relying on two state court decisions: *Goene v. State*, 577 So. 2d 1306 (Fla. 1991) and *State v. Foster*, 484 N.W.2d 113 (N.D. 1992). However, these cases are inapposite because unlike state courts, federal courts are courts of limited jurisdiction and only have the powers that Congress and the Constitution have provided them. *See generally Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed. 2d 750 (1981) ("[F]ederal courts, unlike their state counterparts, are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers.") Furthermore, both cases are distinguishable. Each defendant, like Washington, lied about his name during sentencing in order to hide an extensive criminal history. However, in *Goene*, the trial court specifically couched its ruling in the alternative, relying on two specific Florida Rules of Criminal Procedure in addition to its inherent authority to correct a sentence. *Goene*, 577 So. 2d at 1307 n.1. The Florida Supreme Court did not address those issues, but merely looked at the question of whether there was a violation of Double Jeopardy. *Id.* at 1307-09. In *Foster*, the North Dakota Supreme Court recognized, "as a general proposition, a court of law has the inherent authority to correct judgments obtained through fraud," relying on North Dakota Rule of Criminal Procedure 35 (which resembled the pre-1987 Federal Rule 35) and *Bishop*. *Foster*, 484 N.W.2d at 117. However, as discussed, reliance on *Bishop* and the pre-1987 Rule 35 for the present or past existence of this inherent power in federal courts is not persuasive.

14

result, the court held a hearing to revoke Kendis's probation, vacated its original sentence, and resentenced Kendis to four years incarceration. *Id.*

The issue in *Kendis* was whether the court was permitted to revoke probation based on a defendant's actions *prior* to sentencing. We held that "revocation of probation is permissible when defendant's acts prior to sentencing constitute a fraud on the court." *Id.*

In 1987, when the district court took the action being considered in *Kendis*, revocation of probation and the accompanying procedure were governed by 18 U.S.C. §§ 3651 and 3653. Those sections provided that the court "may revoke or modify any condition of probation, or may change the period of probation," 18 U.S.C. § 3651, and that following revocation, if the original sentence was suspended, the court may "impose any sentence which might have originally been imposed." 18 U.S.C. § 3653. Furthermore, § 3653 allowed for the probation officer to arrest the probationer for cause "[a]t any time within the probation period." *Id.* We made no holding in that case regarding the "inherent power" of a district court to vacate Kendis's probation and resentence him. The revocation of probation and subsequent resentencing were specifically permitted by statute, and nothing in the statute dealt with the effect of the timing of the fraud. We merely interpreted §§ 3651 and 3653 to permit revocation based on a fraud on the court that occurred prior to the imposition of the probationary sentence or the commencement of the period of probation, a result not inconsistent with the language of the applicable statutes. Probation is still governed by different rules and statutes than those which govern sentences of imprisonment.[10]

---

[10] Sentences of probation are currently governed by 18 U.S.C. §§ 3561-66 and Federal Rule of Criminal Procedure 32.1. However, even under the current framework, the court may still revoke probation for a violation that takes place "at any time prior to the expiration or termination of the term of probation," and "resentence the defendant." 18 U.S.C. § 3565(a).

15

Given the absence of authority suggesting a longstanding inherent power of a district court to vacate a criminal sentence based on fraud, other than *Bishop* and its limited progeny, we find that there is no "'long unquestioned' power of federal district courts" to vacate a judgment procured by fraud in the *criminal* context. *Carlisle*, 517 U.S. at 426, 116 S.Ct. at 1466.

**B.**

To the extent district courts may have ever had the inherent power to vacate a sentence procured by fraud, such power was abrogated by the enactment of 18 U.S.C. § 3582(c) and the amendments to Federal Rule of Criminal Procedure 35. As discussed above, the Supreme Court has distinguished its holding in *Chambers* in the criminal context when the text of the governing Federal Rule of Criminal Procedure clearly limits the power of the court. *Carlisle*, 517 U.S. at 426, 116 S.Ct. at 1466. Washington argues that the text of 18 U.S.C. § 3582(c) and Federal Rule of Criminal Procedure 35(a) are just as clear in their intent to limit the district court's power as Rule 29(c) was in *Carlisle*. Section 3582(c) provides for very specific and limited circumstances under which a court may modify a sentence after it has been imposed.[11] The court below looked to

---

[11] The court may not modify a term of imprisonment once it has been imposed except that--
  (1) in any case--
   (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
     (i) extraordinary and compelling reasons warrant such a reduction; or
     (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a

16

the text and legislative history of the statute and concluded that its proscriptions were inapplicable in the present case. The Senate Report explains that one of the general purposes of the section is to "describe[] the circumstances under which the term of imprisonment may be modified." S. Rep. No. 98-225, at 116 (1983) *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3299. Specifically, "[s]ubsection (c) provides that a court may not modify a sentence except as described in the subsection. The subsection provides 'safety valves' for modification of sentences in three situations." *Id.* at 121, *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3304. The district court concluded that these "safety valves" merely apply to reduction to a term of imprisonment, and do not address the powers of the court when

> sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

vacating a sentence for fraudulent conduct during the sentencing. *Gregg*, 2006 WL 2850564, at *3 n.2. However, the district court's reading is contrary to both the clear language of the statute and its legislative history.[12] Section 3582(c) states in no uncertain terms that "[t]he court may not modify a term of imprisonment once it has been imposed except" in the specific situations provided by that section. 18 U.S.C. § 3582(c).

The plain language of Federal Rule of Criminal Procedure 35(a) is equally clear in its limitation of a court's jurisdiction to modify its own sentences.[13] In *Bowles v. Russell*, ___ U.S. ___, 127 S.Ct. 2360, 2366, 168 L.Ed. 2d 96 (2007), the Supreme Court held that statutory time limits are jurisdictional, and courts may not make equitable exceptions to them. Following *Bowles*, we held in *United States v. Higgs*, 504 F.3d 456 (3d Cir. 2007), that the 7-day time limit of Rule 35(a) is jurisdictional. We looked at the history of Rule 35, including the language of the Rule before the significant 1987 and 1991 amendments. *Id.* at 459-64. We noted that prior to 1987, the Rule allowed a district court to correct an "illegal" sentence at any time. *Id.* at 460. However, after the 1991 amendments, "the authority to correct a sentence under [current subdivision (a)] was intended to be very narrow and extend only to those cases in which an obvious error or mistake has occurred in the sentence."[14] *Id.* at 462 (quoting Fed. R. Crim. P. 35 advisory

---

[12] The district court seemingly overlooked the sentence preceding the "safety valve" language: "a court *may not modify a sentence except as described in the subsection.*" S. Rep. No. 98-225, at 121, *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3304 (emphasis added).

[13] "Correcting Clear Error: Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).

[14] Prior to the 2002 amendments, current subdivision 35(a) was subdivision 35(c).

committee's note) (internal brackets omitted).[15] We concurred with our sister circuit in holding that § 3582(c) sets forth "a *statutory* basis for limiting the district courts' jurisdiction" and therefore that Rule 35(a) 7-day limit is jurisdictional. *Id.* at 464.

Because the government moved to vacate the sentence well beyond the 7-day period provided for in Rule 35, the district court lacked jurisdiction to hear the motion or vacate the sentence. The district court concluded that Washington's fraud was not "error" as covered by Rule 35, and therefore the Rule's time restriction was inapplicable and did not abridge any inherent power to remedy fraud on the court. *Gregg*, 2006 WL 2850564, at *3. However, this conclusion is contrary to the weight of authority from other circuits and the Advisory Committee's notes stating that § 3582(c) and Rule 35 are intended to define the full scope of the district court's power to

---

[15] The Advisory Committee's Notes explain that:
The Committee considered, but rejected, a proposal from the Federal Courts Study Committee to permit modification of a sentence, within 120 days of sentencing, based upon new factual information not known to the defendant at the time of sentencing. Unlike the proposed subdivision (c) which addresses obvious technical mistakes, the ability of the defendant (and perhaps the government) to come forward with new evidence would be a significant step toward returning Rule 35 to its former state. *The Committee believed that such a change would inject into Rule 35 a degree of post-sentencing discretion which would raise doubts about the finality of determinate sentencing that Congress attempted to resolve by eliminating former Rule 35(a).* It would also tend to confuse the jurisdiction of the courts of appeals in those cases in which a timely appeal is taken with respect to the sentence. Finally, the Committee was not persuaded by the available evidence that a problem of sufficient magnitude existed at this time which would warrant such an amendment.
Fed. R. Crim. P. 35 advisory committee's note (emphasis added).

19

correct a sentence.[16] We also reject the argument that were we to hold that district courts lack the inherent power or jurisdiction to vacate sentences in a situation like this one, then the court would be without a remedy. One who makes false statements to the court is still subject to the independent penalties for those false statements, as this case demonstrates by Washington's subsequent indictment.

While we are dubious that federal courts ever had the inherent power to vacate criminal sentences that were procured by fraud, "[w]hatever the scope of this 'inherent power,' . . . it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle*, 517 U.S. at 426, 116 S.Ct. at 1466. Accordingly, we hold that to the extent there might have at one point been inherent power in the court, such power was abrogated by Congress pursuant to § 3582(c) and Federal Rule of Criminal Procedure 35(a).

---

[16] *See United States v. Lopez*, 26 F.3d 512, 515, 520 (5th Cir. 1994) (holding that a district court only has authority to modify a sentence as provided by § 3582(c) and when a resentencing takes place outside the 7-day window "the district court lacked jurisdiction to act pursuant to Rule 35(c)"); *United States v. Fahm*, 13 F.3d 447, 453 (1st Cir. 1994) ("Upon careful consideration of [Rule 35], the advisory committee's note, and relevant case law, we conclude that the court had no inherent power to increase its original sentence."); *United States v. Ross*, 9 F.3d 1182, 1188 (7th Cir. 1993) ("This new version of [Rule 35] adapts the earlier scheme to the demands of the sentencing guidelines structure while preserving, albeit on a very constricted scale, the former authority of the district court, grounded in rule and, at least prior to the rules, inherent power, to correct errors in sentences.") (citing Fed. R. Crim. P. 35(c) advisory committee's note); *United States v. Fraley*, 988 F.2d 4, 7 (4th Cir. 1993) ("Thus, the addition of subsection (c) to Rule 35 demonstrates that district courts are to have only limited authority to correct sentences . . . and Rule 35(c) fully defines the scope of that authority.").

## C.

Because the district court's order vacating Washington's sentence and directing resentencing was issued without authority or jurisdiction we must consider whether the issuance of a writ of mandamus is appropriate. "Traditionally, federal courts have used their power to issue writs only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *United States v. Santtini*, 963 F.2d 585, 594 (3d Cir. 1992) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). "[I]f there has been a judicial 'usurpation of power' the invocation of this extraordinary remedy will be warranted." *Id.* (citing *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed. 2d 305 (1967)). It is precisely in cases such as this, where a district court clearly acts in excess of its statutory authority that the issuance of a writ of mandamus is appropriate.

"The standard for issuing a writ of mandamus is stringent." *Wexler*, 31 F.3d at 128. As a preliminary matter, Washington must show that the district court committed a "clear error of law." *Id.* (citing *In re Bankers Trust Co.*, 775 F.2d 545, 547 (3d Cir. 1985)). As discussed above, the district court committed a clear error of law vacating an already imposed sentence in clear contradiction of its statutorily limited authority.

Washington must also show that the error will "cause irreparable injury" and that there is "no means of adequate relief" other than a writ of mandamus. *Id.* (citing *Cippolone v. Liggett Group, Inc.*, 785 F.2d 1108, 1118 (3rd Cir. 1986) and *Bankers Trust*, 775 F.2d at 547). The error in this case, namely vacating a sentence absent authority to do so, will cause irreparable injury because it would result in Washington being subjected to a new sentencing hearing, and potentially more time in prison, after his term of incarceration has been served.[17]

_____

[17] His right to appeal the resentencing would not cure the potential for excess prison time, since there in no certainty that his

21

Washington has no "adequate means of relief" other than mandamus to remedy the error of law prior to being resentenced.

Because Washington's appeal of the order on Double Jeopardy grounds (No. 07-1884) is brought under the Collateral Order Doctrine, that appeal is limited only to the Double Jeopardy issue. *See Abney*, 431 U.S. at 662-63, 97 S.Ct. at 2041-42 (discussing the narrow scope of issues available for review under the Collateral Order Doctrine). As such, considering the resentencing issue under a writ of mandamus allows for the consolidation of all of Washington's claims into one case before us, as opposed to forcing a piecemeal resolution, as a writ of mandamus might do in other circumstances. *Cf. Wexler*, 31 F.3d at 128 (noting that "'[m]andamus is disfavored because its broad use would threaten the policy against piecemeal appeals") (quoting *In Re School Asbestos Litigation*, 977 F.2d 764, 772 (3rd Cir. 1992)). Allowing this Court to decide all the issues contained in these appeals altogether, rather than in a piecemeal fashion, is clearly in the interests of judicial economy, and therefore the use of mandamus is favored.[18]

## IV.

Washington alleges that the sentence imposed by the district court (Dalzell, J.) in his false claims case was both procedurally and substantively unreasonable since he received the statutory maximum of five years imprisonment, while the applicable Guidelines range was only four to ten months.

## A.

_____

new sentence would be stayed pending appeal. *See* 18 U.S.C. § 3143(b).

[18] Because we are issuing a writ of mandamus vacating the district court's March 20, 2007 Order, we need not address whether Washington's Double Jeopardy rights would be violated by subjecting him to resentencing, as no such resentencing will take place. Accordingly, appeal No. 07-1884 is dismissed as moot.

Our review of criminal sentences involves a two step analysis.

> We must first ensure that the district court committed no significant procedural error in arriving at its decision, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-- including an explanation for any deviation from the Guidelines range."

*Wise*, 515 F.3d at 217 (quoting *Gall v. United States*, ___ U.S. ___, 128 S.Ct. 586, 597, 169 L.Ed. 2d 445 (2007)). While the district court's sentence is reviewed under an abuse of discretion standard, the level of deference given will depend on the type of procedural error asserted. *Id.* "Thus, if the asserted procedural error is purely factual, our review is highly deferential, and we will conclude there has been an abuse of discretion only if the district court's findings are clearly erroneous." *Id.* However,"we do not defer to a district court when the asserted procedural error is purely legal, as, for example, when a party claims that the district court misinterpreted the Guidelines." *Id.*

If there is no procedural error, then we review the sentence merely for "substantive reasonableness," determined under the abuse of discretion standard. *Id.* "We may consider the extent of a court's deviation from the Guidelines range, but we 'must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Id.* (quoting *Gall*, 128 S.Ct. at 597). However, "we may not reverse the district court simply because we would have imposed a different sentence." *Id.*

### B.

#### 1.

In determining Washington's sentence, the district court committed legal error in finding that the filings with the Court of

23

Appeals and the Supreme Court using the name "Kennard Gregg" were violations of 18 U.S.C. § 1001. Section 1001 specifically excepts "a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." 18 U.S.C. § 1001(b).

The district court spent a considerable portion of the sentencing hearing focusing on the number of federal judges who had been deceived. It also stated its belief that each misrepresentation to each individual judge could, in and of itself, be a violation of § 1001. Judge Dalzell read into the record the names of all the members of the Third Circuit Court of Appeals who heard the appeal en banc, and the names of the justices of the Supreme Court, totaling 22 federal judges.[19] The government contends that the district court's recitation of the number of judges was merely a matter of rhetoric to emphasize the severity of the nature and circumstances of Washington's deception. We disagree.

The court properly focused on the need for deterrence and expressed the view that a four month sentence was inadequate to accomplish that objective. In fact, the court remarked that, given the severity of the offense and the surrounding circumstances, a sentence in the Guidelines range would be "a joke." It also noted Washington's extensive criminal history, and his propensity to violate parole and/or probation. However, the court stated that "as a finding, I cannot imagine a more serious violation of the statute, in that a total of 22 federal judges were actively misled into thinking this defendant was someone other than the person he was impersonating." Given its finding that each of the filings with the Court of Appeals and the Supreme Court were violations of § 1001 notwithstanding the clear language of the statute excepting "statements, representations,

---

[19] We note that Judge Dalzell also referred to the misstatements before the Magistrate Judge and Judge Padova but apparently did not include them in his list of 22 federal judges who had been misled by Washington.

24

writings or documents" submitted to the judge, the district court relied on a clearly erroneous legal conclusion in forming the basis for its sentence.[20]  18 U.S.C. § 1001(b).

**2.**

Additionally, the court overstated exactly how much benefit Washington received from his misrepresentations. Relying on the PSR in the case before him, Judge Dalzell concluded that Washington had been sentenced before Judge Padova under criminal history two as opposed to five.  However, Washington would have only been a category four prior to actually being sentenced for the counterfeiting.  An offense level of nine and a criminal history of *two* would result in a Guidelines range of six to twelve months, as reflected by the six month sentence Washington received in the counterfeit currency case. An offense level of nine and a criminal history of *four* would result in a Guidelines range of twelve to eighteen months, which would have been his range had his true criminal history been used.  An offense level of nine and a criminal history of *five* would result in a Guidelines range of eighteen to twenty-four months.  In actuality, Washington received a benefit of six months on either end of the Guidelines range as a result of his misrepresentations.  However, by Judge Dalzell's assessment,

---

[20] Washington's affidavit opposing the government's motion to vacate his sentence stated:  "While the defendant does not concede any of the allegations of the government, none of the facts they allege are relevant to the disposition of this motion."  During sentencing, Judge Dalzell erroneously concluded that this affidavit also violated § 1001.  Washington argues that Judge Dalzell drew a negative inference from his refusal to admit the allegations against him, violating his Fifth Amendment right against self-incrimination.  *See Mitchell v. United States*, 526 U.S. 314, 330, 119 S.Ct. 1307, 1315-16, 143 L.Ed. 2d 424 (1999) (court holding a defendant's silence against him during sentencing proceedings impermissibly burdens his constitutional right against compelled self-incrimination).  In light of our disposition we need not reach the merits of this argument.

25

Washington received a benefit of one year on either end of the Guidelines range. The court noted that "the defendant hugely benefitted at his sentencing." It is certainly reasonable to assume that Judge Dalzell's mistaken calculation of the benefit Washington received from his deceit before Judge Padova may have influenced the sentence he imposed.

**3.**

Washington also contends that the district court incorrectly calculated the applicable Guidelines range by including the counterfeiting conviction as a "prior sentence." In the PSR, and therefore Judge Dalzell's findings, the counterfeit currency case before Judge Padova was included as a "prior sentence" corresponding to an additional two points, and thus a criminal history category of five, as opposed to four if that sentence were not included. *See United States v. Irvin*, 369 F.3d 284, 292 (3d Cir. 2004) ("[W]e will generally exercise our discretion to recognize a plain error in the (mis)application of the Sentencing Guidelines.").

Section 4A1.2(a)(1) of the Sentencing Guidelines provides that "[t]he term 'prior sentence' means any sentence previously imposed . . . for conduct not part of the instant offense." U.S. Sentencing Guidelines Manual § 4A1.2(a)(1). Application Note 1 states in pertinent part: "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." *Id.* at Application Note 1. Section 1B1.3 defines relevant conduct as "all acts and omissions committed . . . by the defendant; and that occurred during the commission of the offense of conviction, . . . or in the course of attempting to avoid detection or responsibility for that offense." *Id.* at § 1B1.3(a)(1)(A).

The offense of conviction before Judge Dalzell was the violation of § 1001. Counterfeiting was not "relevant conduct" for that offense. The actions taken in the commission of the counterfeiting did not occur "during the commission" of the false statements, or in an "attempt[] to avoid detection or

26

responsibility" for the false statements. *Id.* A defendant's subsequent acts may result in additional criminal charges, as Washington's did, but that does not render the original offense relevant conduct for the later charges. Simply because a defendant tries to frustrate the judicial process does not make the crime for which he was originally indicted relevant conduct for future prosecutions. The fact that Washington would not have needed to lie if he had not been arrested for counterfeiting does not make the counterfeiting relevant conduct for the lying.

Washington attempts to analogize to *Irvin*, where we held that the district court had committed plain error by considering the defendant's state court manslaughter conviction in sentencing him for possession of a firearm by a convicted felon. 369 F.3d at 292. In determining that the manslaughter was "relevant conduct" to the possession charge, we noted that "Irvin could not have exercised criminally negligent control over his Smith & Wesson pistol on June 9, 1998 unless he was in possession of it on the same date." *Id.* at 290. In *Irvin*, the act of possession and manslaughter were inextricably linked as the possession facilitated the manslaughter. "[T]he offense committed by Irvin, as charged in both the state and federal indictments, centered on the passive act of possessing a firearm on June 9, 1998." *Id.* at 292. The two were temporally and operationally connected. However, no similar connection exists where Washington made false statements to the government *after* the commission of the counterfeiting had been completed. As such, including the counterfeit currency sentence in the PSR and Guidelines calculation was not erroneous.[21]

## IV.

Accordingly, for the reasons set forth above, we will issue a writ of mandamus instructing the district court (Padova, J.) to vacate its order of March 20, 2007, which vacated the original

---

[21] Because we have found procedural error in Judge Dalzell's sentence and are remanding for resentencing, we need not evaluate the substantive reasonableness of the sentence.

27

sentence in the counterfeiting case.  Additionally, we reverse the district court's (Dalzell, J.) sentence in the false statements case and remand for resentencing consistent with this opinion.  The appeal on Double Jeopardy grounds, No. 07-1884, is dismissed as moot.